BAKER, Judge.
Gordon Wayne Welshman (appellant) was convicted in a bench trial in the Circuit Court for the City of Lynchburg (trial court) for possession of cocaine with intent to distribute. On appeal, he contended the trial court erroneously denied his motion to suppress the cocaine and held the evidence sufficient to prove he intended to distribute the cocaine. A divided panel of this Court reversed and dismissed the conviction, holding the cocaine upon which his conviction was based was discovered as the result of an unreasonable seizure of his person, in violation of the Fourth Amendment. See Welshman v. Commonwealth, 25 Va.App. 599, 491 S.E.2d 294 (1997). Upon rehearing en banc, we hold the trial court properly denied appellant’s motion to suppress and the evidence is *26 sufficient to prove appellant intended to distribute the cocaine. Accordingly, we affirm his conviction.
During June 1995, Investigator Thomas of the Lynchburg Police Department conducted ongoing surveillance in the 2100 block of Main Street, which was known as an open-air drug market. Between January 1994 and August 11, 1995, the police “had [703] calls in the [2100] block of Main Street,” 136 of which were for drug offenses. Sixty-eight of the drug offense calls directly involved the residence at 2110 Main Street, which was a reputed crack house. Police also received seventeen “shots fired” calls for that block during the same period.
On June 29, 1995, Investigator Thomas used binoculars to observe two individuals engaging in hand-to-hand transactions with drivers and pedestrians in the 2100 block of Main Street. He saw those two individuals carry white chunks of what appeared to be crack cocaine in their hands and exchange the chunks for cash. He believed the two were selling cocaine. Appellant, along with about seven other people, had been standing in front of the residence at 2110 Main Street for at least fifteen minutes, but appellant was not visibly involved in any of the apparent drug transactions.
Investigator Thomas radioed his observations to a team of four officers, including Officer Duff, who approached the scene to apprehend the two individuals suspected of selling cocaine. It was about 8:25 p.m. and “was just barely light outside.” When Investigator Thomas radioed the team, the two target individuals were “in the middle of the street ... making a transaction” with a “stopped ... vehicle.” However, “when the officers began approaching in their vehicle[,] both individuals ran back into [the] little group where [appellant] was.” This group was on the sidewalk area in front of 2110 Main Street, between the front porch and a van with its doors open parked in front of the residence. Four or five people, “male and female and some children,” were on the front porch of the residence, and about three people were inside the van. In addition, “[t]here were other pedestrians within the block.” *27 Investigator Thomas testified that the officers “always want to outnumber the individuals we’re getting out with, but in some cases we can’t do it.” The officers “elected to go in with what they had,” but upon arriving at the scene, Officer Duff called for additional officers.
“Due to the nature and reputation of the area and [Officer Duffs] experience with the area, and, also some of the people that [he] had observed there,” he decided to direct everyone on the sidewalk at the scene to he “in a prone position momentarily” for the safety of the officers and the civilians. Duff also wanted to apprehend the target subjects before they had a chance to dispose of any cocaine they may have possessed. The officers intended to secure the two target individuals and the scene “either by having people leave or making sure that ... the people [who] decided to stay” had no weapons. Duff previously had seen a pellet gun in the mailbox of the residence, which was located only three to four feet from where appellant was standing, and in the possession of one of the occupants of the residence. He also was aware of several prior “shots fired” calls involving that residence and knew police previously had seen an individual firing a weapon in front of that residence. The 2100 block “was known as a high crime, very volatile area.”
As the officers were exiting the car, Officer Duff told everyone on the sidewalk, including appellant, to get on the ground and extend their arms out from their bodies. He said he would have allowed anyone other than the target individuals to leave the scene, but he did not inform them of this option. Everyone complied with Officer Duffs directive. While other officers secured the target subjects, Officer Duff noticed appellant had not extended his arms as directed and instead had kept them under his torso. Fearing appellant was reaching for a weapon, Duff “immediately went to [appellant]” and again told him to extend his arms. As Duff began to roll appellant over, appellant complied by extending his arms. Duff saw nothing in the area where appellant had been lying but was concerned about the officers’ safety and frisked appellant for weapons. When he patted the exterior of appel *28 lant’s left front pants pocket, he detected an object that “felt like several smaller objects that were hard and it felt like ... they were wrapped in some type of baggy-type wrap.” Without manipulating the contents of appellant’s pocket, Duff immediately concluded the objects were crack cocaine. He then pulled from appellant’s pocket a piece of a brown paper bag containing five or six chunks of crack cocaine weighing 1.44 grams. Other than appellant and the target individuals, police did not frisk anyone else at the scene.
In a search of appellant incident to arrest, the officers found $150 in cash, comprised of five $20 bills and one $50 bill. They found no devices for ingesting cocaine in appellant’s possession. After Mirandizing appellant, Officer Duff asked him if he smoked crack cocaine. Appellant said, “Do I look like I smoke cocaine?” When Duff replied, “No,” appellant said, “All right then.” Appellant said he was not holding the cocaine for anyone else and denied having an intent to sell it.
At trial, Officer Duff qualified as an expert and testified appellant’s possession of 1.44 grams of crack cocaine was inconsistent with possession for personal use. He testified that crack cocaine was commonly sold in the Lynchburg area in $20 and $40 rocks and that one gram of cocaine would cost $150 to $175. Investigator Thomas testified that, in his experience, people selling cocaine commonly carry several rocks in pieces of brown paper or small pieces of cellophane, plastic wrappers or plastic bags. Purchasers, by contrast, he testified, “usually just get the rock and leave.”
Appellant moved to suppress, contending the seizure of his person and the subsequent pat-down search and removal of the cocaine from his pocket violated the United States and Virginia Constitutions. The trial court denied the motion to suppress, finding “the police officers in the case acted properly and had reasonable probability or reasonable basis to believe that the area involved was very dangerous; that it was a high crime area.” As a result, he held the officers’ “actions were reasonable.”
*29 At trial, appellant moved to strike the Commonwealth’s evidence, but the trial court denied the motion and convicted appellant of possessing cocaine with intent to distribute. The trial court “[drew] the inference based on [appellant’s] answers [to] what the police officer asked him” that “[appellant] was not a [cocaine] user.”

Motion to Suppress

In reviewing a trial court’s denial of a motion to suppress, “the burden is upon [appellant] to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.” Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980). Determining whether police may make a warrantless search or seizure involves issues of both law and fact and is reviewed de novo on appeal. See Ornelas v. United States, 517 U.S. 690, 696-97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (articulating standard for reviewing determinations of reasonable suspicion and probable cause). However, “[i]n performing such analysis, we are hound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.” McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas, 517 U.S. at 699, 116 S.Ct. 1657).

Detention

The Commonwealth concedes appellant was seized within the meaning of the Fourth Amendment when Officer Duff ordered him to lie face down on the ground and extend his arms. The Commonwealth also concedes the officers had no reason to believe appellant had been engaged in criminal activity. The question on appeal, therefore, is whether the officers’ detention of appellant nevertheless was constitutionally justified. We hold that it was.
*30 “The [F]ourth [A]mendment does not proscribe all seizures, only those that are ‘unreasonable.’ Whether a seizure is unreasonable is determined by balancing the individual’s right to be free from arbitrary government intrusions against society’s countervailing interest in preventing or detecting crime and in protecting its law enforcement officers.” Bethea v. Commonwealth, 14 Va.App. 474, 476, 419 S.E.2d 249, 250 (1992) (en banc), aff’d on other grounds, 245 Va. 416, 429 S.E.2d 211 (1993); see U.S. Const. amend. IV; Va. Const. art. I, § 10. The validity of a seizure “ ‘turns on an objective assessment of the officer’s actions in light of the facts and circumstances confronting him at the time,’ and not on the officer’s actual state of mind at the time the challenged action was taken.” Maryland v. Macon, 472 U.S. 463, 470-71, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) (quoting Scott v. United States, 436 U.S. 128, 136, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978)).
Ordinarily, in the absence of consent, even a brief detention must be based on at least a reasonable, articulable suspicion the person seized is engaged in criminal activity. See, e.g., McGee, 25 Va.App. at 198-99, 487 S.E.2d at 261-62. However, as the United States Supreme Court has held, the absence of probable cause or reasonable suspicion of criminal activity does not necessarily render a detention unlawful. See Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997); Michigan v. Summers, 452 U.S. 692, 705, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); see also United States v. Martinez-Fuerte, 428 U.S. 543, 556-62, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976) (upholding border patrol stops of vehicles at fixed checkpoint in absence of reasonable suspicion that vehicle contained illegal aliens).
In Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340, for example, the Court held that “a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.” Id. at 705, 101 S.Ct. 2587 (footnote omitted). Among various “legitimate *31 law enforcement interest[s]” in detaining the occupants, it emphasized the
importance ... [of] minimizing the risk of harm to the officers.... [T]he execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.
Id. at 702-03, 101 S.Ct. 2587 (footnote omitted). Although the Court stressed the importance of the existence of the search warrant to justify the detention in that case, see id. at 701, 101 S.Ct. 2587, it also noted its holding did not “preclude the possibility that comparable police conduct may be justified by exigent circumstances in the absence of a warrant.” Id. at 702 n. 17, 101 S.Ct. 2587.
In the more recent case of Wilson, 519 U.S. 408, 117 S.Ct. at 886, the Court extended Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977), to hold that a police officer making a routine traffic stop may order a passenger out of the car for safety reasons, even if the officer has no reason to suspect the passenger of criminal behavior. See also Bethea, 14 Va.App. 474, 419 S.E.2d 249. The Court noted the “reasonableness [of an officer’s actions] ‘depends “on a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers.” ’ ” Wilson, 519 U.S. 408, 117 S.Ct. at 885 (quoting Mimms, 434 U.S. at 109, 98 S.Ct. 330 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975))). “On the public interest side of the balance,” the Court identified a “weighty interest in officer safety,” advanced by depriving the occupants of access to any weapons which might be concealed in the passenger compartment. See id. at 885-86, 95 S.Ct. 2574. It concluded that
danger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for *32 ordering the driver out, the additional intrusion on the passenger is minimal.
Id. at 886, 95 S.Ct. 2574.
Under the reasoning of Summers and Wilson, we hold the officers here were justified in ordering appellant to lie on the ground briefly, both for his safety and the safety of the officers and other bystanders. The officers lacked reasonable suspicion or probable cause to believe appellant was engaged in criminal activity and did not have an arrest warrant for the two target individuals. However, they had probable cause to believe the two target individuals were then engaged in selling cocaine in plain view directly in front of a reputed crack house, about which officers had received numerous “shots fired” complaints. When the four officers first began to approach the scene, the two target individuals were standing by a car in the middle of the street. By the time the officers arrived, the two men had retreated to the sidewalk into the group of about eight people, of which appellant had been a part for at least fifteen minutes. Once the target subjects had retreated into the group, that group outnumbered the police officers by a ratio of two to one. Other people, including children, were in close proximity.
Although the officers had not seen any weapons on the people at the scene, given the number of people in close proximity, the reputation of the house and block for violence, see Brown v. Commonwealth, 15 Va.App. 282, 234 n. 1, 421 S.E.2d 911, 912 n. 1 (1992) (recognizing that “presence in a high crime area” is a factor which may be considered in determining whether an investigatory stop is appropriate), and the nature of the crime for which they sought to apprehend the target subjects, see, e.g., Logan v. Commonwealth, 19 Va.App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc) (noting that relationship between distribution of controlled substances and possession and use of dangerous weapons “is now well recognized”), the evidence supports the trial court’s conclusion that the officers reasonably feared for their safety and the safety of the bystanders and properly ordered those people on the sidewalk with the target subjects to he on the ground.
*33 We conclude the trial court did not err in denying the motion to suppress. Requiring the officers to notify the members of the group on the sidewalk that they were free to leave before or while the officers apprehended the target subjects could have posed an increased risk to the safety of the officers, the members of the group on the sidewalk, and the other bystanders if the target subjects had attempted to dispose of evidence, resist arrest, or flee the scene. Therefore, the officers’ order to the bystanders on the sidewalk to lie on the ground “momentarily” while the target subjects were taken into custody was not unreasonable. See Baker v. Monroe Township, 50 F.3d 1186, 1191-92 (3d Cir.1995) (in federal civil rights action, holding that police executing no-knock search warrant for drugs could detain mother and her three children, who were climbing steps to target apartment, to protect both the officers and those detained); Willowby v. City of Philadelphia, 946 F.Supp. 369, 373-74 (E.D.Pa.1996) (in federal civil rights action, holding that police executing search warrant for drugs did not violate constitutional rights of those present on porch of adjacent row house by ordering them to “get down ... in the interest of the bystanders’ and officers’ safety”) (footnote omitted).
Moreover, the officers briefly detained only those people in immediate proximity to the target subjects and not those on the nearby porch or in the van. In addition, Officer Duff testified he intended to allow people to leave the scene immediately after the target subjects had been secured and he would have frisked only those who chose to stay at the scene.
Viewing the facts in the light most favorable to the Commonwealth, we cannot say the brief detention of appellant violated his rights under the United States or Virginia Constitutions.

Frisk for Weapons

Appellant also contends Officer Duff violated his Fourth Amendment rights when Duff frisked him for weapons. Again, we disagree.
*34 Under settled principles, once an officer has lawfully detained an individual, “he is ‘authorized to take such steps as [are] reasonably necessary to protect [his and others’] personal safety and to maintain the status quo during the course of the stop.’ ” Servis v. Commonwealth, 6 Va.App. 507, 519, 371 S.E.2d 156, 162 (1988) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). An officer may preserve the status quo by ordering the person detained to place his hands where the officer can see them. See Woodson v. Commonwealth, 14 Va.App. 787, 793-94, 421 S.E.2d 1, 5 (1992), aff’d, 245 Va. 401, 429 S.E.2d 27 (1993); Bethea, 14 Va.App. at 478, 419 S.E.2d at 252.
Additional information may provide the basis for a frisk of the person for weapons. An officer “may conduct a limited pat-down search of the suspect’s outer clothing to search for weapons if the officer reasonably believes, based on specific and articulable facts, that the suspect might be armed and dangerous.” Phillips v. Commonwealth, 17 Va.App. 27, 30, 434 S.E.2d 918, 920 (1993). The refusal of a person detained to show his hands may provide just such a basis. See James v. Commonwealth, 22 Va.App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (permitting frisk of passenger who appeared jittery and did not respond to officer’s order to keep hands in view). Additional factors appropriate for consideration may include the reputation of the neighborhood as a high-crime area. See Brown, 15 Va.App. at 234 n. 1, 421 S.E.2d at 912 n. 1.
Officer Duff initially detained appellant for safety reasons and did not have reasonable suspicion of criminal activity by appellant. However, Officer Duff was lawfully there investigating criminal activity that Investigator Thomas had observed. Once appellant had been detained, Duff was entitled to take reasonable steps to protect the safety of the officers, the target individuals, and everyone else at or near the scene. In determining what measures were appropriate, Duff was entitled to consider the reputation of the immediate area for violence and drug-related crime. See id. Duff *35 attempted to maintain safety in a minimally intrusive manner by ordering appellant and the others on the sidewalk to lie prone and extend their arms from their bodies so their hands would be in plain view. When appellant refused Officer Duffs order to extend his hands from his body, placing them under his torso instead, Duff had specific and articulable facts giving rise to the reasonable belief appellant “might be armed and dangerous.” See id.; see also United States v. Moorefield, 111 F.3d 10, 13-14 (3d Cir.1997) (upholding pat-down of passenger following his failure to obey officer’s order to place hands in view); Lansdown v. Commonwealth, 226 Va. 204, 212-13, 308 S.E.2d 106, 111-12 (1983), cert. denied, 465 U.S. 1104, 104 S.Ct. 1604, 80 L.Ed.2d 134 (1984) (permitting frisk of van’s passenger for weapons where driver was stopped for multiple traffic infractions including reckless driving and attempting to elude a police officer and where passenger “individually did nothing to indicate he possessed a concealed weapon”).
Appellant’s subsequent compliance with Duffs order and Duffs failure to find a weapon on the ground beneath appellant did not remove the possibility appellant had a weapon on his person and might again try to access it.
Under these facts, we conclude the frisk for weapons was not an unreasonable search.

“Plain Feel” Doctrine

When Officer Duff felt the rocks of crack cocaine in appellant’s pocket, the plain feel doctrine of Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), permitted their seizure. Under that doctrine,
[i]f a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same *36 practical considerations that inhere in the plain view context.
Id. at 375-76, 113 S.Ct. 2130.
Here, Officer Duff testified he identified the item when he first felt it and did not have to manipulate it in order to complete the identification. Therefore, viewed in the light most favorable to the Commonwealth, the evidence supported the trial court’s denial of appellant’s motion to suppress on this issue. See also Ruffin v. Commonwealth, 13 Va.App. 206, 208-09, 409 S.E.2d 177, 178-79 (1991) (applying plain view doctrine to uphold seizure where officer conducting pat-down for weapons found item he thought to be controlled substance).

Intent to Distribute

Appellant also challenges the sufficiency of the evidence to prove intent to distribute. In evaluating such a challenge, we view the record in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. See Martin v. Commonwealth, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987). The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters to be determined by the fact finder. See Long v. Commonwealth, 8 Va.App. 194, 199, 379 S.E.2d 473, 476 (1989).
Circumstantial evidence may establish the elements of a crime, provided it excludes every reasonable hypothesis of innocence. See, e.g., Tucker v. Commonwealth, 18 Va.App. 141, 143, 442 S.E.2d 419, 420 (1994). However, “the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.” Hamilton v. Commonwealth, 16 Va.App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact, see Cantrell v. Commonwealth, 7 Va.App. 269, 290, 373 S.E.2d 328, 339 (1988), and a finding by the trial court is *37 binding on appeal unless plainly wrong. See Martin, 4 Va.App. at 443, 358 S.E.2d at 418.
“Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence.” Servis v. Commonwealth, 6 Va.App. 507, 524, 371 S.E.2d 156, 165 (1988). Such evidence may include the quantity of drugs and cash possessed and whether appellant used drugs. See Poindexter v. Commonwealth, 16 Va.App. 730, 734-35, 432 S.E.2d 527, 530 (1993). Possession of a large sum of money, especially in small denominations, and the absence of any paraphernalia suggestive of personal use, also are regularly recognized as factors indicating an intent to distribute. See Colbert v. Commonwealth, 219 Va. 1, 4, 244 S.E.2d 748, 748-49 (1978).
Here, appellant possessed 1.44 grams of crack cocaine rocks and $150 in cash, comprised of five $20 bills and one $50 bill. Officer Duff, who was accepted by the court as an expert, testified the quantity of cocaine found was inconsistent with personal use and consistent with distribution. He testified appellant’s possession of the $20 bills also was consistent with distribution of crack cocaine, which usually was sold in $20 and $40 increments. Finally, police found no evidence of personal use of cocaine, and appellant denied holding it for someone else. These facts, combined with appellant’s indignant response to police when they asked if he smoked crack cocaine, permitted the inference that he possessed the cocaine with the requisite intent to distribute. The trial court, as the trier of fact, drew just such an inference, and we cannot say it erred in doing so. Officer Duff admitted an addict could consume one gram of cocaine in a day, and Investigator Thomas admitted appellant could have purchased the drugs as they were packaged. However, no evidence in the record showed appellant personally used cocaine, and appellant’s statement to Officer Duff negated such an inference. Therefore, the trial court was entitled to conclude that the only reasonable hypothesis flowing from the evidence was that appellant intended to distribute the cocaine.
*38 For these reasons, we hold the trial court did not err in denying appellant’s motion to suppress and in finding the evidence sufficient to prove he intended to distribute the cocaine. Therefore, we affirm appellant’s conviction.

Affirmed.