COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Elder and Senior Judge Cole
Argued at Richmond, Virginia


JESSE JEROME HENDREN
                                      MEMORANDUM OPINION* BY
v.    Record No. 1961-99-2            JUDGE MARVIN F. COLE
                                           AUGUST 1, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF HALIFAX COUNTY
                    William L. Wellons, Judge

            Tracy L. Quackenbush, Assistant Public
            Defender, for appellant.

            Marla Graff Decker, Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on brief), for appellee.


     Jesse Jerome Hendren, appellant, was convicted in a bench

trial of possession of cocaine, obstruction of justice and driving

without an operator's license.  On appeal, appellant contends the

trial judge erred by denying his motion to suppress.  We disagree

and affirm.

                           BACKGROUND

     On September 27, 1998, appellant approached a traffic

checking detail on Sinai Road in Halifax County.  Deputy Sheriff

Steve Moore testified that appellant "pulled up to the checking

detail" but "wouldn't stop at first."  Moore "had to instruct

_____
     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

[appellant] two or three times to stop the car."  When Moore asked for appellant's driver's license, appellant "said he did not have it with him at the time."  Moore then "asked [appellant] to pull over to the side of the road, so he wouldn't block the traffic that was coming through."  Appellant's car contained three passengers.  Moore asked appellant to step out of the car and again inquired about appellant's driver's license.  "When [appellant] got out of the car, he had his right hand closed[,] . . . [and h]e was trying to hide his hand from [Moore]."  Moore asked appellant to keep his hands where Moore could see them, but appellant "kept moving his hand around."  Moore testified as follows:

> He moved his hand around behind his leg,
> trying to hide it from me.  Again, I told
> him to open his right hand and keep it where
> I could see it.  He tried to stick his hand
> in his pocket, and when he tried to put his
> hand in his pocket, [Moore and another
> officer] grabbed him.

Appellant's "hand still wouldn't open."  A struggle ensued, and the officers placed appellant on the ground.  After subduing appellant, the officers "turned him over on his left side and found . . . what appeared to be crack cocaine up under him."

At the March 10, 1999 hearing on appellant's motion to suppress, appellant argued that he was unlawfully seized and searched based solely on a traffic stop.  According to appellant, "there was no probable cause" or "reasonable suspicion to believe he had done anything criminal."  He argued

-

that "having a closed hand does not indicate he had a weapon, and it doesn't indicate criminal activity."

ANALYSIS

The Law

Once a vehicle has been lawfully stopped, an officer is authorized to "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Terry v. Ohio, 392 U.S. 1, 24 (1968). Such measures may include a pat-down search for weapons. See id. at 27. The question is would "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Id. at 21-22.

> The purpose of this limited [protective]
> search is not to discover evidence of crime,
> but to allow the officer to pursue his
> investigation without fear of violence
> . . . . So long as the officer is entitled
> to make a forcible stop, and has reason to
> believe that the suspect is armed and
> dangerous, he may conduct a weapons search
> limited in scope to his protective purpose.

Adams v. Williams, 407 U.S. 143, 146 (1972) (discussing Terry).

In determining the reasonableness of a search, a court must balance "'the need to search [or seize] against the invasion which the search [or seizure] entails.'" Terry, 392 U.S. at 21 (quoting Camara v. Municipal Court, 387 U.S. 523, 536-37 (1967)). In Terry, the Supreme Court explained:

-

[T]here is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.  Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.  American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.  Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.

In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.  When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

Id. at 23-24.

A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation.  Thus, it must be limited to that which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion.

Id. at 25-26.

-

"The officer need not be absolutely certain that the individual is armed; the [ultimate] issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. "The validity of a seizure '"turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," and not on the officer's actual state of mind at the time the challenged action was taken.'" Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 127 (1998) (en banc) (citations omitted). Moreover, "[a]n officer is entitled to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person." James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996).

> If, under Terry, a police officer is justified in conducting a protective weapons search based upon the officer's reasonable belief that a suspect may be armed and dangerous, such a weapons search would necessarily include the right to search a clenched fist. Common sense would not dictate otherwise. Weapons are normally held in one's hands. Hence, a search for weapons in a suspect's hands is reasonable under such circumstances. Otherwise, a suspect could avoid the detection of a weapon by simply hiding it in his hand, where it remains ready for use.

State v. Williams, 544 N.W.2d 350, 353 (Neb. 1996).

-

## Application

Appellant does not contest the validity of the traffic checkpoint or the validity of his stop. Instead, he argues that: (1) the officers' actions in grabbing his hand when he thrust it into his pocket "[were] not proper as a search incident to the traffic violation"; and (2) his "behavior did not otherwise justify the search."

When appellant approached the traffic checkpoint, he initially refused to stop his car. It was not until the officer instructed appellant two or three times to stop that he did so. Upon further investigation, the officer learned that appellant did not have in his possession a driver's license. Appellant's reluctance to stop the car and failure to possess a driver's license properly aroused the officer's suspicion and supported Officer Moore's decision to have appellant pull over so he could investigate the situation. Under those circumstances, Moore did not know whether appellant possessed a valid license.[1] Appellant's car contained three passengers. When appellant exited his car, he kept his right hand closed and tried to hide

---

[1] By not having a driver's license in his possession when he was stopped, appellant was in violation of Code § 46.2-104, failure to carry a driver's license, a traffic infraction punishable by a fine. At the time of the incident, Moore also had to consider, inter alia, whether appellant had a valid driver's license, see Code § 46.2-300, whether he was driving on a suspended or revoked license, see Code § 46.2-301, or whether he was driving after having been declared a habitual offender, see Code § 46.2-357.

-

it.  At this point, the police had observed three highly suspicious circumstances warranting further investigation. Appellant refused Moore's order to open his hand and attempted to place his hand into his pants pocket, causing the officers to grab his hand.

In light of the facts and circumstances confronting the officers at the time, including appellant's suspicious conduct, see James, 22 Va. App. at 745, 473 S.E.2d at 92, the officers were justified in seizing appellant's hand.  We find the circumstances under which the police encountered appellant, namely, appellant's escalating suspicious behavior during a valid traffic stop, "'warrant[ed] a man of reasonable caution in the belief' that the action taken was appropriate[.]"  Terry, 392 U.S. at 21.  In other words, we hold that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  Id. at 27; see also United States v. Hensley, 469 U.S. 221, 235 (1985) (after officers validly stopped suspect pursuant to Terry, "they were authorized to take such steps as were reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop"); People v. Shackelford, 546 P.2d 964, 967 (Colo. Ct. App. 1976) (during valid Terry stop, defendant kept his hand closed and refused to open it; officers forced it open and found stolen credit cards; upholding search "prompted by the defendant's suspicious and unusual movements in

-

response to the confrontation"); State v. Bridges, 610 So. 2d 827, 828-29 (La. Ct. App. 1992) (holding that officers were justified in forcing open defendant's clenched fist during Terry stop); Worthey v. State, 805 S.W.2d 435, 437, 439 (Tex. Crim. App. 1991) (upholding search of purse where, during Terry stop, defendant disobeyed officer's order not to move or hide her hands); Manry v. State, 621 S.W.2d 619, 622-23 (Tex. Crim. App. 1981) (defendant's "unusual behavior" when stopped justified weapons search); Welshman, 28 Va. App. at 34, 502 S.E.2d at 129 (approving frisk for weapons; holding that police officer may preserve the status quo by ordering detainee to place his hands where officer can see them).

Therefore, the trial judge did not err in denying appellant's motion to suppress the evidence. Accordingly, we affirm.

Affirmed.

-