COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


DETORE T. BROWN, S/K/A
 DETORE TWION BROWN

MEMORANDUM OPINION[*] BY
v.    Record No. 1438-00-1        JUDGE ROBERT J. HUMPRHEYS
                                        JUNE 12, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

S. Jane Chittom, Appellate Defender (Public
Defender Commission, on brief), for
appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


    Detore T. Brown appeals his convictions, following a bench

trial, of two counts of robbery, two counts of use of a firearm in

the commission of a felony, and three counts of possession of a

firearm by a felon.[1]  Brown contends that the trial court erred in

overruling his motion to suppress evidence, which he alleges was

obtained as a result of an illegal search.  Brown also contends

that the evidence was insufficient as a matter of law to support

the convictions.  Because this opinion has no precedential value

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

    [1] Brown and Nickkinba Braswell were jointly tried for these
offenses.

and because the parties are conversant with the facts, we do not recite them in detail here.

On appeal, Brown first complains that he was unlawfully seized by police, requiring suppression of all evidence subsequently obtained, including his confessions. It is well settled that

> "[u]ltimate questions of reasonable suspicion and probable cause to make a warrantless . . . seizure involve issues of both law and fact and are reviewed de novo on appeal." However, "[i]n performing such analysis, we are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." "In reviewing a trial court's denial of a motion to suppress, 'the burden is upon appellant to show that this ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'"

Christian v. Commonwealth, 33 Va. App. 704, 709-10, 536 S.E.2d 477, 480 (2000) (citations omitted).

Brown and Braswell were detained because their female companion matched the description of the "teen bandit," a woman who had committed several armed robberies in the Portsmouth and Virginia Beach areas. Brown argues that Officer I.E. McNett unlawfully detained him because he had no reasonable suspicion that Brown had been engaged in unlawful activity. Indeed, McNett testified that he had no information that Brown had

-

committed any crime before he detained him for the purpose of performing a "pat-down" search for weapons.

"Ordinarily, in the absence of consent, even a brief detention must be based on at least a reasonable, articulable suspicion the person seized is engaged in criminal activity." Welshman v. Commonwealth, 28 Va. App. 20, 30, 502 S.E.2d 122, 127 (1998) (en banc) (citation omitted). "However, as the United States Supreme Court has held, the absence of probable cause or reasonable suspicion of criminal activity does not necessarily render a detention unlawful." Id. (citing Maryland v. Wilson, 519 U.S. 408, 414-15 (1997); Michigan v. Summers, 452 U.S. 692, 705 (1981); and United States v. Martinez-Fuerte, 428 U.S. 543, 556-62 (1976) (upholding border patrol stops of vehicles at fixed checkpoint in absence of reasonable suspicion that vehicle contained illegal aliens)).

In Welshman, we noted the Summers Court held "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." Id. We also recognized that "[a]lthough the Court stressed the importance of the existence of the search warrant to justify the detention in that case, it also noted its holding did not 'preclude the possibility that comparable police conduct may be justified by exigent circumstances in the absence of a warrant.'" Id. at 31, 502 S.E.2d at 127 (citations omitted). In Wilson, "the Court

-

extended Pennsylvania v. Mimms, 434 U.S. 106 (1977), to hold that a police officer making a routine traffic stop may order a passenger out of the car for safety reasons, even if the officer has no reason to suspect the passenger of criminal behavior." Welshman, 28 Va. App. at 31, 502 S.E.2d at 127.

Based on the reasoning in these cases, as well as society's interest in protecting the safety of officers and potential bystanders, we held that the officers in Welshman were justified in detaining bystanders, in addition to the targeted subjects, even though they lacked reasonable suspicion or probable cause to believe that the bystanders were engaged in criminal activity. In so holding, we recognized the peculiar facts of that case. Namely, that the officers had probable cause to believe the two target individuals were then engaged in selling cocaine, that the officers had previously received numerous "shots fired" complaints from that area, which had a reputation for violence, that when the officers approached the scene the two target individuals had retreated to the sidewalk into a group of about eight people, that the group outnumbered the police officers by a ratio of two to one, that other people, including children, were in close proximity, and that the nature of the crime for which the officers sought to apprehend the target subjects held some inherent danger. Id. at 32-33, 502 S.E.2d at 128.

-

Our analysis in <u>Welshman</u> applies equally here.  Officer McNett was attempting to stop and detain the target individual, the female.  McNett had at least reasonable suspicion to believe at that time that she had been involved in several robberies, which are by their nature, violent crimes.  In addition, when McNett approached the three individuals, he was outnumbered by three to one.  Brown's suspicious actions of refusing to remove his hands from his pockets and apparently attempting to distance himself from Officer McNett, in conjunction with these other factors, leads to the conclusion that Officer McNett's brief detention of Brown for purposes of performing a "pat-down" search for weapons in order to secure his own safety, when viewed in the light most favorable to the Commonwealth, was limited and reasonable under all the circumstances and therefore did not violate Brown's rights under the United States or Virginia Constitutions.

In so holding, we do not go so far as to adopt an "automatic companion" rule.[2]  We simply find that under the particular facts of this case, the officer's brief detention of Brown was reasonable.  Accordingly, we find no error in the trial court's decision to overrule Brown's motion to suppress.

---

[2] During oral argument, the Commonwealth did not press it's argument on brief with respect to the "automatic companion rule," which has been adopted by several of our sister states. Accordingly, we do not address the issue further.

Brown next argues that the evidence was insufficient to support his convictions. He first contends that he cannot be convicted of robbery and/or of possessing a firearm on December 4. Brown claims that "[t]he worst that can be made of [his] statement regarding the December 4 robbery is that he was present," but that the facts do not establish that he participated "in any way." However, Brown, by his own confession, states "I robbed the Sentry [at Portsmouth Boulevard] with a nine-millimeter at gunpoint." Viewing the evidence in the light we must, we do not find that the trial court was plainly wrong in finding the evidence sufficient to support Brown's conviction for this offense.

Brown also contends that he cannot be convicted of possession of a firearm for his possession of the .9mm on that date. Brown contends that since he was convicted for possession of the .9mm on December 8, the date he was arrested, he cannot be convicted for possessing the same firearm on two occasions. Code § 18.2-308.2 provides, in relevant part:

> A. It shall be unlawful for (i) any person who has been convicted of a felony or (ii) any person under the age of twenty-nine who was found guilty as a juvenile fourteen years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult, whether such conviction or adjudication occurred under the laws of this Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any firearm or to knowingly and

-

> intentionally carry about his person, hidden from common observation, any weapon described in § 18.2-308 A.

In construing this statute, we have held that "[u]pon consideration of the purposes of Code § 18.2-308.2 and being mindful that penal statutes must be strictly construed against the Commonwealth and applied only in those cases clearly falling within the language of the statute . . . when [a] defendant possesse[s] [three firearms], he commit[s] a single offense under Code § 18.2-308.2, not three." Acey v. Commonwealth, 29 Va. App. 240, 251, 511 S.E.2d 429, 434 (1999). We based our holding on the "gravamen of the offense," which we found to be "the possession of a firearm by a felon." Id. at 250, 511 S.E.2d at 433. Under this reasoning, the unit of prosecution for this offense becomes the number of occasions on which a defendant "possesses" one or more weapons. Because the evidence establishes that Brown exercised dominion and control over the firearm on two separate occasions, it is clear that Brown committed two distinct violations of a single criminal proscription. Thus, the trial court did not err in convicting Brown of these two separate offenses.

As an alternative to this argument, Brown contends that because he also made the statement in his confession that the gun used during that particular robbery "could have been the 380 or the nine," he might have had the shotgun on that occasion. Brown extrapolates from this statement and argues that since the

-

evidence does not demonstrate that the shotgun ejected the casing when test-fired, it was not operable, and therefore, he cannot be convicted of possession of the firearm.

"[I]n determining whether an item is a 'firearm,' the Commonwealth must prove two discrete elements: (1) that the weapon is designed or intended to expel projectiles by the discharge or explosion of gunpowder, and (2) that it is capable of doing so." Gregory v. Commonwealth, 28 Va. App. 393, 400, 504 S.E.2d 886, 889 (1998). Here, even assuming Brown's uncertainty of which weapon he used extends to the shotgun, there is no dispute that the shotgun was designed or intended to expel projectiles by the discharge or explosion of gunpowder. Instead, Brown claims that it was not capable of doing so. However, the evidence established that when test-fired, the gun made a loud booming noise and discharged smoke. Although shotgun pellets were not expelled from the weapon, the evidence demonstrated that this was because the officer had removed the pellets from the casing before test-firing the shotgun. Once again, viewing the evidence in the light we must, we do not find that the trial court was plainly wrong in finding this evidence sufficient to establish that the shotgun was nonetheless capable of expelling one or more projectiles by the explosion of gunpowder and thus, was operable.

Brown finally argues that the evidence was insufficient to establish that he was involved with the robbery on December 2.

-

Brown contends that because witness Virginia Smith testified that Braswell was the individual who actually held the gun, and because she was not able to identify Brown in a photo lineup after the incident, the evidence against Brown was unreliable and insufficient to support the conviction. However, Brown's own confession stated "I robbed Sentry at [that location] at gunpoint with a sawed-off shotgun." Brown even provided information to the police enabling them to locate the shotgun. In light of this, and again, viewing the evidence as we must, we do not find that the trial court was plainly wrong in finding the evidence sufficient to convict Brown of this offense.[3]

For the reasons set forth above, the judgment of the trial court is affirmed.

<u>Affirmed</u>.

---

[3] In light of our discussion concerning the operability of the shotgun, we do not address Brown's argument that the shotgun used on December 2 was inoperable, therefore barring his conviction for possession of a firearm on that date.