COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


ROBERT DYKES, A/K/A
 LEROY JOHNSON
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 2717-01-3          JUDGE ROSEMARIE ANNUNZIATA
                                         SEPTEMBER 24, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
                      Charles M. Stone, Judge

            Joseph R. Winston, Special Appellate Counsel
            (Public Defender Commission, on briefs), for
            appellant.

            H. Elizabeth Shaffer, Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     The trial court convicted Robert Dykes of possession of more

than nine pounds of marijuana with the intent to distribute and

sentenced him to serve thirty years in the penitentiary, with

twenty years suspended.  On appeal, Dykes contends that the

evidence was insufficient to support a finding of constructive

possession or possession with the intent to distribute.  For the

reasons that follow, we affirm.

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Background

On appeal, we view the evidence in the light most favorable to the Commonwealth, the party prevailing below, together with all reasonable inferences that may be drawn.  Ortega v. Commonwealth, 31 Va. App. 779, 786, 525 S.E.2d 623, 627 (2000) (citing Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (additional citation omitted)).  On August 31, 2000, Thomas Duggan, a United States Postal Inspector and director of the Prohibitive Mailing team, seized a package in Los Angeles, California because it exhibited several suspicious characteristics.  The package was addressed to "Lisa Beckford" at "1402 Spruce Street Ext., Martinsville, Virginia 24112."  After obtaining a search warrant, the team opened the package and discovered 9.9 pounds of marijuana.  They repackaged the drugs and forwarded the package to Postal Inspector Brumbaugh in Roanoke, Virginia.

Brumbaugh learned that no one named "Lisa Beckford" received mail at the address on the package.  Based on his professional experience, Brumbaugh knew that drug traffickers often use incorrect address information on packages.  Brumbaugh therefore wrote a letter to "Lisa Beckford" explaining that an incorrect zip code had prevented delivery.  He encouraged her to contact his office if she still wanted the package delivered.

The next day, he received a telephone call from a man identifying himself as "Harris Beckford, Lisa Beckford's husband."

-

"Mr. Beckford" stated they had received the letter, and he requested re-delivery at the same address. Brumbaugh planned to deliver the package the following day. When Brumbaugh arrived at the address, Marco Taylor answered the door, claiming he was "Lisa Beckford's boyfriend," and asked to sign for the package. Brumbaugh asked whether the package was Lisa Beckford's and whether she was expecting it, and Taylor responded affirmatively to both questions. He then took the package and signed for it as "Jimmy Long." At trial, Taylor testified that he used the name "Jimmy Long" because Dykes told him the package contained drugs. He further testified that Dykes paid him to sign for the package.

Shortly thereafter, Martinsville police officers saw Taylor leave the residence. The officers executed their search warrant and found Robert Dykes, April Mills, and her small child inside the residence. The police found the letter Brumbaugh had sent to "Lisa Beckford," regarding the incorrect zip code, in the front pocket of Dykes' pants. Officers found the delivered marijuana in the closet of a bedroom, along with an electronic scale located about three feet from the package. Additionally, the officers found personal papers and items with Dykes' name and the residence's address on them, including an optometrist's prescription and warrrants for Dykes' arrest.

Dykes' former girlfriend, Nicole Gravely, owned the residence and had allowed Dykes to stay there for at least two weeks prior to his arrest. Gravely stayed with her mother on the weekends,

-

and she was not present at the residence during the time of the delivery.

At trial, Taylor testified for the Commonwealth as part of a plea bargain which reduced his charges to misdemeanors. In his testimony, Taylor approximated the value of the marijuana in the package at $3,600, or $350 to $400 per pound.

The trial court dismissed the conspiracy charge against Dykes since there was no evidence corroborating Taylor's testimony. The judge stated "I don't feel like you've convicted the Defendant of conspiracy based solely on Mr. Taylor's testimony considering the incentive that he has . . . I generally require some corroboration unless the witness is most convincing." The trial court convicted Dykes of possession with intent to distribute.

## ANALYSIS

When sufficiency of the evidence is challenged on appeal, we consider the evidence "in the light most favorable to the Commonwealth, the prevailing party, and grant to it all reasonable inferences fairly deducible therefrom." Hagy v. Commonwealth, 35 Va. App. 152, 157, 543 S.E.2d 614, 616 (2001) (citation omitted). Furthermore, we "permit the verdict to stand unless plainly wrong." George v. Commonwealth, 242 Va. 264, 278, 411 S.E.2d 12, 20 (1991), quoted in Tibbs v. Commonwealth, 31 Va. App. 687, 707, 525 S.E.2d 579, 588 (2000). The judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be

-

disturbed on appeal unless plainly wrong or without evidence to support it. Brown v. Commonwealth, 5 Va. App. 489, 491, 364 S.E.2d 773, 774 (1988) (citations omitted).

## CONSTRUCTIVE POSSESSION

Dykes argues there was insufficient evidence to convict him of constructive possession. He argues that the trial court rejected Taylor's testimony, due to his incentive to lie, and without Taylor's testimony, the evidence fails to prove he knowingly exerted dominion and control over the marijuana beyond a reasonable doubt. We disagree.

The Commonwealth may establish constructive possession through "evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and the character of the substance and that it was subject to his dominion and control." Logan v. Commonwealth, 19 Va. App. 437, 444, 452 S.E.2d 364, 368-69 (1994) (en banc) (citation omitted).

> Ownership or occupancy of a vehicle or of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items in the vehicle or on the premises in order to prove that the owner or occupant constructively possessed the contraband.

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citation omitted). "Furthermore, proof that a person

-

is in close proximity to contraband is a relevant fact [and] . . . may tend to show that, as an owner or occupant of property or of a vehicle, the person necessarily knows of the presence, nature, and character of a substance that is found there."  Id.

In the case at bar, the Commonwealth introduced sufficient evidence of Dykes' awareness of the nature and presence of the marijuana and that it was subject to his dominion and control. First, the police found the package, together with Dykes' personal items, including warrants for his arrest and other mail addressed to him at the residence, in the only furnished bedroom in the house.  Gravely, Dykes' former girlfriend, permitted Dykes to reside in the house, and she often was away visiting her mother.  The trial court could, therefore, reasonably infer that he was staying in the room and had dominion over its contents.[1]  See id.; see also Hargraves v. Commonwealth, 37 Va. App. 299, 314, 557 S.E.2d 737, 744 (2002) (holding that a drawer used exclusively by defendant for his personal belongings demonstrates his dominion and control over its contents).

Second, the police found the letter Brumbaugh had sent to "Lisa Beckford" in Dykes' pants pocket.  Moreover, Dykes admitted he was in the house on the same day Brumbaugh received a telephone call from "Harris Beckford, Lisa Beckford's

---

[1] There was no evidence that anyone else occupied Dykes' room.

husband."  Therefore, the trial court reasonably inferred that Dykes made the call requesting re-delivery of the package.

Finally, Taylor testified that Dykes paid him to sign for the package because it contained drugs.  Although the trial court noted Taylor had an incentive to lie and found his testimony was insufficient to prove Dykes' guilt on the conspiracy charge without further corroboration, see Feigley v. Commonwealth, 16 Va. App. 717, 722, 432 S.E.2d 520, 524 (1993), the court credited his testimony with respect to the possession charge and found that his testimony, together with the other evidence admitted, proved Dykes' guilt beyond a reasonable doubt.  See Hopkins v. Commonwealth, 230 Va. 280, 293, 337 S.E.2d 264, 272 (1985) (stating that the trier of fact can reject a witness' testimony in part and accept it in part).  We find no error in the court's determination that Dykes possessed the drugs in question beyond a reasonable doubt.

## INTENT TO DISTRIBUTE

Dykes also argues there was insufficient evidence to find an intent to distribute, claiming that the Commonwealth submitted no direct evidence to prove that the marijuana found was packaged for sale or that the amount was more than one person would use personally.  He further contends that the Commonwealth failed to show how the scales would function as part of the marijuana trade. We reject both arguments.

-

"Because direct proof of intent [to distribute drugs] is often impossible, it must be shown by circumstantial evidence." Welshman v. Commonwealth, 28 Va. App. 20, 37, 502 S.E.2d 122, 130 (1998) (en banc) (citations omitted). When proof of intent rests upon circumstantial evidence, the quantity of drugs which the defendant possesses is a circumstance courts should consider. Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984). Quantity alone is sufficient to establish intent to distribute if the amount of drugs found is greater than that normally possessed for personal use. See id. In addition, absence of any paraphernalia suggestive of personal use is recognized as a factor indicating the intent to distribute. Welshman, 28 Va. App. at 37, 502 S.E.2d at 130; see also Dukes, 227 Va. at 122, 313 S.E.2d at 383. Conversely, the presence of paraphernalia used in the packaging process may be considered in support of a finding of an intent to distribute. See Early v. Commonwealth, 10 Va. App. 219, 222, 391 S.E.2d 340, 341-42 (1990).

In the instant case, the Commonwealth's evidence was sufficient to prove an intent to distribute. The package delivered to the residence contained 9.9 pounds of marijuana, with a resale value of approximately $400 per pound and an overall street value of $3,600. We find the quantity of drugs at issue here inconsistent with personal use and consistent with

-

an intent to distribute.  See generally Welshman, 28 Va. App. at 37, 502 S.E.2d at 130; Dukes, 227 Va. at 122, 313 S.E.2d at 383.

Moreover, the officers found an electronic scale in the closet, three feet from the package of marijuana.  The presence of scales, of any variety, found in close proximity to drugs, is evidence of the intent to distribute.  See Davis v. Commonwealth, 12 Va. App. 728, 733, 406 S.E.2d 922, 925 (1991) (recognizing that a set of handscales located fifteen feet from the drugs was packaging paraphernalia that constituted circumstantial evidence of intent to distribute).

For the reasons stated in this opinion, we affirm Dykes' conviction.

Affirmed.